## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ARMANI MARSMAN,

        Plaintiff,

v.

MASSACHUSETTS BAY TRANSIT AUTHORITY,

        Defendant.

Civil Action No._____

**COMPLAINT**

JURY TRIAL DEMANDED

### COMPLAINT
(Jury Trial Demanded)

### I.    NATURE OF THE CLAIM

1.    This action is brought to remedy discrimination upon the basis of religion and gender, as well as retaliation for opposition to unlawful discriminatory practices, in violation of Title VII of the United States Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. and the Massachusetts General Laws 151B § 4 et seq. ("M.G.L.").

2.    Armani Marsman seeks declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII and the M.G.L.

### II.    PARTIES

3.    Armani Marsman ("Marsman" or "Plaintiff"), is a 34-year-old Christian male with sincerely held religious beliefs as such terms are defined by Title VII and M.G.L. He is a resident of Boston, Massachusetts and was formerly employed by Defendant. Marsman resides at Dorchester, Massachusetts 02121.

4.    The Massachusetts Bay Transit Authority (the "MBTA" or "Defendant") is an employer as that term is defined according to Title VII and the M.G.L. (M.G.L. c. 151B § 1 (5)); (42 U.S.C. § 2000e (b)). The MBTA provides bus, trolley, subway, train, commuter rail, ferry, and paratransit public transportation services throughout the Commonwealth of Massachusetts. Defendant has a physical location of 10 Park Plaza, Boston, Massachusetts 02116.

### III.    PROCEDURAL REQUIREMENTS

5.    On or about March 3, 2023, Marsman filed a timely Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), docket number 23-BEM-0065. Marsman's Charge of Discrimination was jointly filed with the Equal Employment Opportunity Commission ("EEOC") and docketed with number 16-c-2023-01049.

6.    Following Marsman's Charge of Discrimination, MCAD received Defendant's Position Statement on or about June 15, 2023.

7.    MCAD heled its investigative conference on or about November 15, 2023, wherein both Plaintiff and Defendant were present.

8.    MCAD eventually made no determination, waiving the entire matter, and deferring it to the EEOC in a letter dated July 10, 2024. (*See* **Exhibit 1**.)

9.    The EEOC then made a non-determination and issued Marsman a 90-day Right to Sue letter dated October 22, 2024. (*See* **Exhibit 2**.)

10.    Accordingly, Marsman has satisfied all procedural requirements to bring the instant case.

### IV.    JURISDICTION AND VENUE

11.    This Court has jurisdiction to address the instant matter pursuant to 28 U.S.C. § 1331 as Title VII claims are federal in nature.

12.     This Court has supplemental jurisdiction over Plaintiffs' M.G.L. claims arising under the statutory and common law pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law. This Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367, because Plaintiff's M.G.L. claims are interrelated with Plaintiff's federal claims and arise from a common nucleus of operative facts arising from Defendant's conduct within the Commonwealth of Massachusetts.

13.     Venue is properly laid out in this Court by virtue of 28 U.S.C. § 1391, as the acts complained of occurred in the Commonwealth of Massachusetts.

## V.     FACTUAL BACKROUND

14.     At all relevant times, Marsman is a Christian male, who believes in natural healing. Taking vaccines is against his sincerely held Christian beliefs.

15.     Marsman was hired by the MBTA for the full-time position of Surface Operator in Boston, Massachusetts on or about September 9, 2013. The primary duties of the Surface Operator position include operating buses to transport passengers to and from stops, physically helping passengers who are disabled get on and off the bus, communicating with passengers, and occasionally resolving conflicts between passengers as they arise.

16.     As an employee of the MBTA, Marsman was also part of Boston Carmen's Union Local 589 ("Local 589").

17.     At the time of his termination, Marsman was making $40.39/hr.

18.     Throughout his employment with the MBTA, Marsman generally fulfilled expectations. However, Marsman was suspended twice for missing work, following stress induced by a shooting Marsman witnessed at the Massachusetts Avenue train station in or around August of 2018, while on the clock.

19.     On another instance, on or about January 2019, after testifying in court on behalf of the MBTA as a witness, after someone set a bus shelter on fire, Marsman was suspended for not returning to the garage directly following his court appearance due to a misunderstanding in company procedure.

20.     On or around 2019, the SARS-CoV-2 virus ("COVID-19") was discovered, leading to a pandemic and emergency responses.

21.     Due to the COVID-19 pandemic, on or about March 16, 2020, the MBTA shut down a large portion of its in-person operations on Governor Baker's March 10, 2020, order which declared a state of emergency in the Commonwealth of Massachusetts.

22.     Marsman continued to work through the pandemic for Defendant in the role of Surface Operator.

23.     On or about July 26, 2021, Marsman applied for the position of Spare Bus Dispatcher - number 21-18115, which was also with the MBTA.

24.     On or about August 19, 2021, Massachusetts' Governor Baker, issued Executive Order No. 595. His order implemented a COVID-19 vaccination requirement for all employees of the Commonwealth of Massachusetts' Executive Branch. The very same day, the MBTA executed its own Vaccination Policy.

25.     On or about September 28, 2021, Defendant distributed its Vaccination Policy with Frequently Asked Questions (the "FAQ"), and Masking Policies sections.

26.     In the FAQ, the document, alerted employees that they could seek specific exemptions from the Vaccination Policy. A religious exemption due to a sincerely held religious belief was one of the exemptions listed in the FAQ.

4

27.    The Policy required all employees to provide proof of vaccination on or before October 17, 2021, or be subjected to disciplinary measures.

28.    On or about October 17, 2021, Marsman completed the mandatory online Vaccine Self-Attestation Form. Such form was required to be completed by all MBTA employees regardless of whether they applied for any exemptions from the Vaccination Policy. At the same time, Marsman applied for a religious exemption from the Vaccination Policy

29.    Effective October 20, 2021, the MBTA issued its COVID-19 Vaccination Policy ("Vaccination Policy" or the "Policy"). The Policy was applicable to all MBTA employees, including those on approved telework.

30.    Non-compliance with the Vaccination Policy resulted in escalatory disciplinary actions beginning with a "First Notice of Non-Compliance," which included a direction to become compliant in the Policy and appear at a follow-up interview approximately four weeks after the date of the notice. The next step was an issuance of a "Final Notice of Non-Compliance," which included a five-day suspension, referral to the Employee Assistance Program and direction to appear at another compliance interview to be held approximately three weeks from the date of the notice. If after such notice, the employee was still non-compliant with the Policy, the employee would become Disqualified Pending Administrative Separation. If after sixty days, the employee was still non-compliant with the Policy, the employee would be terminated.

31.    The Office of Diversity and Civil Rights ("ODCR") is an internal office at the MBTA charged with investigating internal civil rights complaints and processing religious exemption requests to the Vaccination Policy, in addition to executing other duties. At no point in time did

the ODCR engage with Marsman regarding his religious exemption from the Policy, in any manner whatsoever.

32.    On or about November 26, 2021, Marsman interviewed for the Spare Bus Dispatcher position number 21-18115. Defendant's position is that Marsman did not score high enough during his interview to be given a job opportunity as a Spare Bus Dispatcher. Coincidentally, during this time, Marsman was "out of compliance" with the Policy.

33.    Defendant claims on or about December 22, 2021, Marsman was neither vaccinated, nor did he make any request or exemption, and therefore Marsman received a verbal warning from his Supervisior, Lisa Nyquist ("Nyquist"), and copy of the Vaccination Policy.

34.    On or about January 18, 2022, the MBTA alerted Marsman that he did not get the Spare Bus Dispatcher position he had applied and interviewed for. Marsman then filed a union grievance. On or about January 24, 2022, Marsman's union grievance was denied.

35.    On or about February 24, 2022, the MBTA issued Marsman a "VACCINE MANDATE – FIRST NOTICE OF NON-COMPLIANCE" document by Nyquist. Marsman refused to sign his name, but he did receive the notice. This notice established a direct order to comply with the Vaccination Policy and to meet with the Cabot Supervisor Office on or around March 24, 2022, to discuss compliance with the Vaccination Policy.

36.    On or about March 29, 2022, Marsman received a "VACCINE MANDATE FINAL NOTICE OF NON-COMPLIANCE, EAP REFERRAL & FIVE DAY SUSPENSION," document. Marsman was suspended from both work and pay, for five days, as a result. Marsman, additionally, was ordered to contact the Employee Assistance Program for evaluation and was directed to report to the superintendent's office on or around April 19, 2022, for a final

opportunity to discuss his compliance with the Policy. Marsman was issued said notice from Nyquist, and again, Marsman refused to sign his name.

37.     On or about June 9, 2022, Defendant issued Marsman a 60-day Disqualification Pending Administrative Separation notice. During his meeting with Nyquist, Marsman, reiterated to her that he had requested a religious exemption from the Vaccination Policy.

38.     Defendant claims Marsman received 2 checks during his separation, both in the amount of $0.00, because he had not worked since March 15, 2022. According to Defendant, Marsman was allegedly on leave awaiting approval from the Department of Family and Medical Leave. Marsman maintains that Defendant was clueless as to what was going on with respect to the COVID-19 pandemic, and its own operations, and required him to use all of his personal days, Family and Medical Leave Act days, and Paid Family and Medical Leave Act days while he was out of compliance with the Policy.

39.     On or around December 2022, the MBTA rescinded its Vaccination Policy due to changing circumstances surrounding the pandemic since the fall of 2021. Allegedly an agreement was made between the MBTA and Local 589 on or about the winter of 2022. Such agreement allowed all disqualified employees to return to work, if they wanted to do so, contingent upon receiving a letter from the MBTA and the employee following up with Defendant's Human Resources Department within thirty days of receiving the letter.

40.     Defendant claims that it mailed a formal letter to all disqualified employees, Marsman included, on or about January 9, 2023, stating that all disqualified employees would be able to return to their jobs if they contacted David Hollis at Defendant's Human Resources Department via email within thirty days of receipt of the letter. If the disqualified employees did not respond

within thirty days, the employees would be considered to have resigned. Marsman, at no time received any letters, calls, or any other form of invitation back to work.

41.    Marsman contacted Defendant by sending emails to the Human Resources Department in or around September, October, and December of 2022. Defendant engaged in a pattern of summarily failing to give Marsman a cognizant answer as to when he was terminated.

42.    On or around December 13, 2022, Marsman emailed Jim Evers ("Evers"), President of Local 589 regarding his grievance and the Vaccination Policy. In Evers' reply email, Marsman was told Local 589 would get back to him, however, Local 589 never did. On or around December 21, 2022, Marsman emailed Evers again to no avail, receiving no reply.

42.    On or about December 21, 2022, the MBTA sent Marsman an email stating he was currently active as an employee with the last date worked as April 9, 2022.

43.    On or about December 22, 2022, the MBTA sent Marsman an email reply directing him to reach out to his union delegate regarding his termination date.

44.    Marsman then stopped in person, at Local 589's headquarters on or about December 22, 2022. Jose Cruz, Local 589's Division One Delegate, initiated a heated verbal altercation, causing Marsman to leave. Marsman never heard back from Local 589.

45.    In a Department of Unemployment Assistance ("DUA") letter dated March 3, 2023, the DUA wrote: "[t]he claimant was discharged because of a knowing violation of a reasonable and uniformly enforced policy regarding vaccine requirements. However, it has been established that his/her failure to comply was due to a sincerely held religious belief. Therefore, it cannot be concluded that the employer's policy was reasonably applied to the claimant." (*See* **Exhibit 3**).

46.    Marsman was found to eligible for unemployment benefits retroactively, beginning on September 4, 2022, by the DUA.

47.    According to the REQUEST FOR VERIFICATION OF EMPLOYMENT document from Defendant, dated December 12, 2022, Marsman's termination date was April 4, 2022.

48.    According to payroll records, Marsman was still employed by the MBTA in April of 2022, and beyond.

49.    Defendant maintains that on February 23, 2023, which it believes would have been 45 days from Marsman receiving the letter inviting him to return to work, he resigned due to a failure to reply. However, Marsman never received any letter from the MBTA and was still unsure as to his termination date and his status with the MBTA due to the conflicting dates and information he received from Defendant.

50.    On or about February 27, 2023, Marsman received a letter from Empower Financial Services, Inc. wherein they wrote that Marsman's final contribution was received on June 10, 2022. According to the letter, Marsman called on February 27, 2023, and the termination date had not yet been added. Accordingly, as of February 27, 2023, there was no termination date for Marsman, contrary to the MBTA's belief.

51.    On or about March 3, 2023, Marsman filed a timely Charge of Discrimination with MCAD. Marsman's Charge of Discrimination was jointly filed with the EEOC and docketed accordingly.

52.    Following Marsman's Charge of Discrimination, MCAD received Defendant's Position Statement on or about June 15, 2023.

53.    MCAD held its investigative conference on or about November 15, 2023, wherein both Plaintiff and Defendant were present. Following the investigative conference, Defendant received requests for further documentation and information from MCAD. Defendant answered

the information requested, as well as serving a Motion to Place Information Under Protective Order on or about December 7, 2023.

54.     On or about January 6, 2024, via email, Marsman suggested mediation to MCAD to resolve his matter, which the Defendant declined on or about January 9, 2024.

55.     MCAD waived the entire matter and deferred the case to the EEOC in a letter dated July 10, 2024. The EEOC then made a non-determination and issued Marsman a 90-day Right to Sue letter, dated October 22, 2024.

56.     Upon information and belief, the reasons provided by the MBTA for terminating Marsman's employment were pretext for discrimination, and direct discrimination. Marsman was fired from employment because of his sincerely held religious beliefs, gender, and in retaliation for engaging in protected activity pursuant to the M.G.L. and Title VII.

57.     As a result of the above, Marsman suffered lost wages and benefits, harm to his reputation, and emotional distress.

58.     Marsman now brings the instant matter to this Court.

## VI.    STATEMENT OF CLAIMS

59.     For all counts that follow, Marsman hereby restates and incorporates by reference the facts and assertions contained in the above paragraphs of this pleading as if fully set forth herein.

### COUNT I
### Defendant's Firing of Marsman Due to His Sincerely Held Religious Beliefs Violates Title VII 42 U.S.C. § 2000e-2 (a)(1)

60.     Marsman hereby restates and incorporates by reference the facts and assertions contained in the above paragraphs of this pleading as if fully set forth herein.

61.     Marsman at all times had a sincerely held religious belief as that term is defined by Title VII. *See* 42 U.S.C. § 2000e (j).

62.     Marsman applied for a religious exemption from the Vaccination Policy because his sincerely held religious beliefs prevented him from receiving vaccines. To date, neither anyone from the MBTA has held an interactive dialogue with Marsman, nor has the OCDR reached out to him, despite Marsman filing the online forms and telling his direct supervisor on many occasions that he is a Christian and that his sincerely held religious beliefs prohibit him from taking vaccines.

63.     Upon information and belief there was an accommodation available that would have been effective and not caused undue hardship to Defendant.

64.     The attempts made by the MBTA to compel Marsman into deviating from his sincerely held beliefs by forcing him to receive COVID-19 vaccinations and then disciplining him several times when he did not, culminating in his firing, is discriminatory.

65.     The MBTA relies upon the thinly veiled pretext of Marsman failing to contact the Human Resources Department within thirty days of a letter that he never received – instead of the truth – Marsman was not called back to work and thus fired because he refused to get vaccinated due to his sincerely held religious beliefs.

66.     Defendant's proffered excuse of merely having a non-discrimination workplace poster and policy fails to address that mere posters do not prevent individuals from committing discriminatory acts. Furthermore, by firing Marsman because of his sincerely held religious beliefs, Defendant is continuously and directly violating Title VII, a codified federal law itself.

67.     Defendant acted intentionally and with malice and/or reckless indifference to Marsman's federally protected rights.

68.     By the acts and practices described above, Defendant has discriminated against Marsman in the terms and conditions of his employment upon the basis of his religion, in violation of Title VII.

69.     Marsman has suffered monetary damages as well as mental anguish and humiliation as a result of Defendant's discriminatory practices.

**COUNT II**
**Defendant's Firing of Marsman Based Upon his Religious Creed Violates M.G.L. c. 151B § (4) 1**

70.     Marsman hereby restates and incorporates by reference the facts and assertions contained in the above paragraphs of this pleading as if fully set forth herein.

71.     Marsman's failure to get the COVID-19 vaccines, thus rendering him non-compliant with Defendant's Vaccination Policy was based upon his sincerely held religious beliefs.

72.     Defendant fired Marsman for remaining non-compliant in its Vaccination Policy. By hiding behind a policy which effectively forced employees to get vaccines or suffer negative consequences, the MBTA was able to discriminate against Marsman upon the basis of his religious creed, because his non-compliance was based upon his sincerely held religious beliefs.

73.     Further, Marsman did attempt at every opportunity to alert the MBTA that his sincerely held religious beliefs should have exempted him from being compelled to violate his beliefs by getting vaccinated. He verbally told his supervisor, he completed the internet forms, and he sent email requests. However, Marsman was repeatedly written up, fired, and when the Vaccination Policy was rescinded, never received a letter or call back telling him he was even eligible to return to work.

74.     Defendant acted intentionally and with malice and/or reckless indifference to Marsman's statutorily protected rights.

75.    By the acts and practices described above, Defendant has discriminated against Marsman in the terms and conditions of his employment upon the basis of his religious creed, in violation of M.G.L. c. 151B § (4) 1.

76.    Marsman has suffered monetary damages as well as mental anguish and humiliation resulting from Defendant's discriminatory practices.

## COUNT III
**Defendant's Treatment of Marsman Violates M.G.L. c. 151B § 4 (1) Upon the Basis of Gender Discrimination**

77.    Marsman hereby restates and incorporates by reference the facts and assertions contained in the above paragraphs of this pleading as if fully set forth herein.

78.    As a man, Marsman alleges, he was treated differently than women similarly suited who did not receive the COVID-19 vaccine and who were noncompliant with the Vaccination Policy. Bus Driver, Gerty, was a woman who did not receive the COVID-19 vaccine. Unlike Marsman, Gerty did not serve the five-day suspension which she should have under the terms of the Vaccination Policy.

79.    Based upon information and belief, other comparators at the MBTA were treated more favorably than Marsman while remaining out of compliance with the Vaccination Policy.

80.    Defendant acted intentionally and with malice and/or reckless indifference to Marsman's statutorily protected rights.

81.    By the acts and practices described above, Defendant has discriminated against Marsman in the terms and conditions of his employment upon the basis of his gender, in violation of M.G.L. c. 151B § (4) 1.

82.    Marsman has suffered monetary damages as well as mental anguish and humiliation resulting from Defendant's discriminatory practices.

13

## COUNT IV
### Defendant's Failure to Provide Marsman a Reasonable Religious Accommodation Violates M.G.L. c. 151B § 4 (1A)

83.     Marsman hereby restates and incorporates by reference the facts and assertions contained in the above paragraphs of this pleading as if fully set forth herein.

84.     Marsman's sincerely held religious beliefs prevented him from getting vaccinated which prevented him from remaining in compliance with the Defendant's Vaccination Policy.

85.     While the MBTA's position is there was a mechanism to provide a reasonable accommodation for religious exemptions, Marsman was never given such reasonable accommodation.

86.     Upon information and belief, under the undue hardship test, Marsman's situation could have been resolved with minimal cost to the Defendant. Marsman followed up on the internet as directed, informed his supervisor Nyquist several times in person, regarding his sincerely held religious beliefs, including during mandated meetings because he was found to be out of compliance with the Policy. However, Defendant refused to accommodate, do any follow up work themselves, or even merely pass his religious exemption over to the OCDR.

87.     Defendant acted intentionally and with malice and/or reckless indifference to Marsman's statutorily protected rights.

88.     By the acts and practices described above, Defendant discriminated against Marsman in the terms and conditions of his employment, by failing to provide a reasonable religious accommodation to him, in violation of M.G.L. c. 151B § 4 (1A).

89.     Marsman has suffered monetary damages as well as mental anguish and humiliation resulting from the Defendant's discriminatory practices.

14

<u>COUNT V</u>
**Defendant Violated M.G.L. c. 151B § 4 (4) by Firing Marsman in Retaliation for Opposing Practices Compelling Him to Violate His Sincerely Held Religious Beliefs in the Terms and Conditions of His Employment.**

90.   Marsman hereby restates and incorporates by reference the facts and assertions contained in the above paragraphs of this pleading as if fully set forth herein.

91.   Marsman opposed getting COVID-19 vaccines, a condition of his employment, which would have violated his sincerely held religious beliefs.

92.   The MBTA then applied its Vaccination Policy to Marsman, finding him in non-compliance. Defendant then wrote him up, fired him, and gave him the run around with inconclusive dates on which he was terminated.

93.   Defendant acted intentionally and with malice and/or reckless indifference to Marsman's statutorily protected rights.

94.   By the acts and practices described above, Defendant fired Marsman in retaliation for opposing practices compelling him to violate his sincerely held religious beliefs in the terms and conditions of his employment, in violation of M.G.L. c. 151B § (4) 4.

95.   Marsman has suffered monetary damages as well as mental anguish and humiliation as a result of Defendant's discriminatory practices.

## VII.   JURY DEMAND

Marsman requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Marsman respectfully requests an Order and Determination:

   a.   pursuant to M.G.L. c.151B § 4 and Title VII of the United States Civil Rights Act, 42 U.S.C. § 2000e;

b. declaring that the acts and practices complained of herein are in violation of the Title VII and the M.G.L.;

c. preliminarily and permanently enjoining these violations of Title VII and the M.G.L.;

d. directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory treatment of him, and make him whole for all earnings he would have received but for Defendant's discriminatory treatment, including, but not limited to: wages, bonuses, pension payments, other lost benefits and interest;

e. directing Defendant to pay Plaintiff compensatory damages for his emotional distress and humiliation;

f. directing Defendant to pay Plaintiff punitive damages for its intentional disregard or and/or reckless indifference to Plaintiff's statutory rights;

g. awarding Plaintiff any costs of this action together with reasonable attorneys' fees;

h. awarding such further relief as is deemed necessary and proper.

DATED: December 27, 2024.

Respectfully submitted,
ARMANI MARSMAN
By his attorney,

Raphael B. Hirsch, Esq.
BBO# 699645
RBH Law Group PLLC
1660 Soldiers Field Road
Suite: 7 #1073
Boston, MA 02135
Tel. 857.500.74000
rhirsch@rbhlawgroup.com

# EXHIBIT 1



The Commonwealth of Massachusetts
Commission Against Discrimination

1 ASHBURTON PLACE, ROOM 601, BOSTON, MA 02108

Sunila Thomas George
Chairwoman

Monserrate Rodríguez Colón
Commissioner

Neldy Jean-Francois
Commissioner

Date: 7/10/2024

VIA ELECTRONIC MAIL ONLY

Armani Marsman
125 Crawford Street
Boston, MA 02121

**RE: Armani Marsman v. Massachusetts Bay Transportation Authority (MBTA)**
**MCAD Docket Number: 23BEM00655**
**EEOC/HUD Federal Charge Number: 16C-2023-01049**

Dear Parties:

The above referenced charge originally received by the Massachusetts Commission Against Discrimination (MCAD) has been waived to the Equal Employment Opportunity Commission (EEOC) for further proceeding. Accordingly, the MCAD will defer to the EEOC for further proceeding and a determination.

Please direct all future correspondence or material to:
**U.S. Equal Employment Opportunity Commission**
**(EEOC) JFK Federal Building, Room 475**
**Government Center**
**Boston, MA 02203**

Sincerely,

Michael D. Memmolo
Executive Director

Cc:

Feng [Kenneth] An
Director, Boston Area Office
U.S. Equal Employment Opportunity Commission
Boston Area Office

Meaghan Green Drake, Esq.
Office of the General Counsel
10 Park Plaza, Suite 3510
Boston, MA 02116

# EXHIBIT 2



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Charlotte District Office**
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/22/2024

**To:** Armani Marsman
125 Crawford Street
Boston, MA 02121
Charge No: 16C-2023-01049

EEOC Representative and email:    ANGIE GALLO
Investigator
Angie.Gallo@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

ANGIE GALLO   Digitally signed by ANGIE GALLO
Date: 2024.10.22 15:26:23 -04'00'

_____   For
Elizabeth "Betsy" Rader
District Director

Cc:
Meaghan Drake, Esq.
Assistant General Counsel
Office of General Counsel
10 Park Plaza, suite 3510
Boston, MA 02116


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you** *receive* **this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 16C-2023-01049 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 16C-2023-01049 to the District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# EXHIBIT 3


THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF LABOR AND WORKFORCE DEVELOPMENT
DEPARTMENT OF UNEMPLOYMENT ASSISTANCE



**416435196**

MARSMAN, ARMANI
125 CRAWFORD ST APT 1
Dorchester, MA 02121

CLAIMANT ID   1938522

CLAIM ID   202301
March 03, 2023

Employer Name

MBTA

Issue Identification Number

0079 1829 01-01

## Notice of Approval

### Reasoning and Findings

You discharged the claimant for a knowing violation of a reasonable and uniformly enforced company rule. However, unusual circumstances existed such that the claimant could not reasonably be expected to adhere to the rule

The claimant was discharged because of a knowing violation of a reasonable
and uniformly enforced policy regarding vaccination requirements. However, it
has been established that his/her failure to comply was due to a sincerely held
religious belief. Therefore, it cannot be concluded the employer's policy was
reasonably applied to the claimant

### Applicable Section of Law

Massachusetts General Law Chapter 151A, §25(e)(2)

### Effect of this Determination

The claimant is eligible to receive benefits beginning 9/4/2022 as long as all other eligibility requirements are met

100 CAMBRIDGE ST, 4TH FLOOR, SUITE 400 ▪ BOSTON, MA 02114
www.mass.gov/dua