UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 24-13218-RGS

ARMANI MARSMAN

v.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

June 17, 2026

STEARNS, D.J.

Plaintiff Armani Marsman is a former employee of the Massachusetts Bay Transportation Authority (the MBTA). Compl. [Dkt. # 1] ¶ 15. The MBTA terminated Marsman's employment because of a policy (the Policy) requiring most of its employees to be vaccinated against the COVID-19 virus. Pl.'s Aff. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. # 22-3] (Pl.'s Aff.) ¶¶ 3, 18. Marsman refused the vaccine based on his Christian beliefs. *Id.* ¶ 3. He alleges that, by terminating him, the MBTA engaged in religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2 (Count I), and Mass. Gen. Laws ch. 151B, § 4 (Counts II, IV-V), as well as gender discrimination in violation of Mass. Gen. Laws ch. 151B, § 4 (Count III). Compl. ¶¶ 60-95.

The MBTA moves for summary judgment,[1] contending that it could not have discriminated against Marsman because he never applied for a religious exemption as permitted by the Policy.[2]  Def.'s Statement of Facts in Supp. of Mot. for Summ. J. [Dkt #17-1] (Def.'s SOF) ¶ 23.  Marsman, for his part, alleges that he did apply for an exemption.[3]  Pl.'s Statement of Facts in Opp'n

---

[1] Because Marsman concedes in his opposition that the summary judgment standard is satisfied as to Count III, *see* Pl.'s Mem. in Opp'n to Mot. for Summ. J. [Dkt. # 22-1] at 10, the court will allow this portion of the MBTA's motion without further analysis.

[2] In March of 2023, Marsman filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC), neither of which made a determination on the charge.  Compl. ¶¶ 5-10.  The EEOC issued a 90-day right to sue in October of 2024, Compl. Ex. 2 [Dkt. # 1 at 20-22] at 21, and Marsman filed this Complaint in December of 2024 in federal district court.  In November of 2025, this court referred the case to the district's Alternative Dispute Resolution (ADR) program.  [Dkt. # 14].  Following the mediation sessions, the case was returned to this court in April of 2026, because "further efforts to settle this case at this time . . . [were] unlikely to be productive."  ADR Report [Dkt. # 30] at 1.

[3] The MBTA filed a motion to strike related to this factual dispute.  Def.'s Mot. to Strike [Dkt. # 25].  Specifically, the MBTA asks the court to strike the following pertinent portions of Marsman's affidavit and statement of facts in opposition to summary judgment: Pl.'s Aff. ¶ 5 and Pl.'s SOF ¶¶ 16, 23-25.  The MBTA contends that these materials pose "direct contradictions" to Marsman's deposition testimony, including his statement that he did not recall whether he completed the exemption application.  Def.'s Mot. to Strike at 3.  The motion to strike is central to this case.  Consequently, the court will analyze it in the context of summary judgment as a whole.

In addition to asking the court to strike materials in conflict with Marsman's deposition testimony, the MBTA also asks the court to strike

to Def.'s Mot. for Summ. J. [Dkt # 22-2 at 1-12] (Pl.'s SOF) ¶ 23.  The court grants summary judgment in favor of the MBTA.

## BACKGROUND

The following facts alleged by the parties will be viewed in the light most favorable to Marsman as the nonmoving party.  In 2013, Marsman was hired as an MBTA bus operator.  In August of 2021, in response to an order of Governor Baker, *see* Def.'s Ex. 5 [Dkt. # 17-6], the MBTA issued the Policy requiring employees to receive COVID-19 vaccinations and submit proof of compliance.  Def.'s Ex. 6 [Dkt. # 17-7].  The Policy stated that some employees might be entitled to exemptions for medical or religious reasons. The MBTA emailed all of its employees, including Marsman, a copy of the Policy and a guidance document, which states: "Employees not vaccinated or approved for an exemption as of October 17, 2021, will be subject to

---

information that it views as "not material" to the outcome of its motion for summary judgment.  Def.'s Mot. to Strike at 4.  Specifically, the MBTA asks the court to strike the following: Pl.'s Aff. 12-15, 18-20 and Pl.'s Suppl. Statement of Facts [Dkt. #  22-2 at 12-14] ¶¶ 5-7.  Def.'s Mot. to Strike at 5. "The court may strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter."   Fed. R. Civ. P. 12(f); *but see Autila v. Mass. Bay Trans. Auth.*, 342 F.R.D. 23, 30 (2022) (An "affidavit is not a 'pleading' within the meaning of Rule 12(f) . . . [because] it is not a 'written instrument.'")  Moreover, the court considers only material facts in evaluating a motion for summary judgment. *See McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).  Yet, the court views this second set of materials, which describe the termination of Marsman's employment, as setting the context for his claims, and declines to strike it from the record.

disciplinary action, up to and including termination." Def.'s Ex. 7 [Dkt. # 17-8].

In September of 2021, the MBTA sent employees a second email that included a link to a "Vaccination Self-Attestation Form," which all employees were required to complete. Def.'s Ex. 8 [Dkt. # 17-9]. The email contained two additional links, one to a "Medical Exemption Form" and one to a "Religious Exemption Form," and stated that employees seeking exemptions to the Policy should "complete the appropriate request form . . ." *Id.* On October 17, 2021, Marsman submitted his Vaccination Self-Attestation Form, where he indicated that he intended to receive approval for an exemption. Def.'s Ex. 9 [Dkt. # 17-10].

Whether Marsman completed the required Religious Exemption Form is a matter of dispute between the parties. The MBTA maintains that Marsman never submitted the Religious Exemption Form, Def.'s SOF ¶ 24, as reflected in the spreadsheet it used for tracking employee accommodation requests, Def.'s Ex. 10 [Dkt. 17-11]. Marsman, however, asserts: "I filled out an additional Google Form made and provided to me by the Defendant, at the same time that I selected religious exemption." Pl.'s Aff. ¶ 5.

When Marsman was asked if he remembered filling out the Religious Exemption Form during his deposition in August of 2025, he stated: "I don't

4

recall." Def.'s Ex. 2 [Dkt. # 17-3] (Def.'s Excerpts of Dep.) at 9. He testified that he had a receipt showing that he completed the Vaccination Self-Attestation Form, although he did not have a similar receipt for the Religious Exemption Form. Pl.'s Ex. 1 [Dkt. # 22-3 at 7-49] (Pl.'s Excerpts of Dep.) at 14. Marsman further testified that he believed he had requested a religious exemption in the course of filling out the Vaccination Self-Attestation Form. Marsman stated:

> The attestation form asked for your personal information. And then on the next sheet it asked whether you got the shot, plan on getting the shot or are you asking for a religious accommodation or medical accommodation . . . . Based off of what you selected, [it] brought you to another page with boxes to outline whatever you [were] selecting . . . . I select religious exemption. It brought me to another page where it ask[ed] me multiple questions. Then it was sent back to the MBTA.

*Id.* at 13-14.

Marsman received multiple warnings that he had not complied with the Policy: His supervisor, Lisa Nyquist, verbally warned him in December of 2021, and the MBTA warned him in writing in February of 2022. Def.'s Excerpts of Dep. at 11; Pl.'s SOF ¶¶ 27-28. That March, the MBTA suspended him for five days for failing to comply. Def.'s Ex. 12 [Dkt. # 17-13].

In May of 2022, the Massachusetts Department of Transportation Office of Diversity and Civil Rights (ODCR) sent a memorandum to MBTA employees that changed the procedure by which employees could seek

religious exemptions to the vaccination requirement (the Updated Policy). The email instructed employees to ask ODCR for an exemption, either verbally or by emailing a provided address.  Pl.'s Ex. 3 [Dkt. # 22-3 at 53-54]. Marsman states that he sought to comply verbally with the Updated Policy, "but because everyone was working remotely, I could not."  Pl.'s Aff. ¶ 10.  He alleges that he repeatedly spoke to Nyquist about a religious exemption, but she refused to assist him or grant one.  Pl.'s Aff. ¶¶ 8-10.

In June of 2022, the MBTA sent Marsman a memo stating that his continued employment was in jeopardy because of his failure to comply with the Policy and offering him sixty days to remedy the issue.  Def.'s Ex. 13 [Dkt. # 17-14].   After the sixty-day period elapsed, the MBTA determined that Marsman was noncompliant and administratively separated him from service.  Def.'s SOF ¶ 33.  Marsman disputes that he was discharged, instead alleging that he was placed on a "paid leave" status from September 19, 2022, through December 22, 2022.[4]   Pl.'s SOF ¶ 33.   He alleges that he was wrongfully denied payment for that period.  Pl.'s Aff. ¶ 13.

---

[4] As evidence, he offers emails with the MBTA, Pl.'s Ex. 4 [Dkt. # 22-3 at 56-57]; Pl.'s Ex. 5 [Dkt # 22-3 at 58-64], and an MBTA employment verification form, Pl.'s Ex. 6 [Dkt. #22-3 at 65-66].

In December of 2022, the MBTA rescinded the Policy and permitted employees who had not complied with it to return to work. Def.'s Ex. 14 [Dkt. # 17-15]. The MBTA alleges that it sent Marsman a letter stating that he could return to work by contacting the MBTA at a provided email address within 30 days of the letter. Def.'s Ex. 15 [Dkt. # 17-16]. Marsman, however, alleges: "I never received the letter to return to work . . ."[5] Pl.'s Aff. ¶ 16.

Marsman claims that the MBTA fired him because of his sincerely held religious beliefs in violation of Title VII, 42 U.S.C. § 2000e-2 (a)(1) (Count I), and Mass. Gen. Laws ch. 151B, § 4(1) (Count II). Compl. ¶¶ 60-76. He further alleges that the MBTA violated Mass. Gen. Laws ch. 151B, § 4(1a) (Count IV) by failing to provide him with a reasonable religious accommodation to its vaccine Policy. *Id.* ¶¶ 83-89. Finally, he alleges that the MBTA violated Mass. Gen. Laws ch. 151B, § 4(4) (Count V) by firing him "in retaliation for opposing practices compelling him to violate his sincerely held religious belief." *Id.* ¶¶ 90-95.

Marsman asks the court for a declaration that the MBTA violated federal and state law, as well as an injunction to prevent the alleged violations from recurring in the future. Compl. ¶ 96. He requests an order

---

[5] Marsman states that he did not learn that employees who were terminated could return to work until his MCAD proceeding. Pl.'s Aff. ¶ 17.

requiring the MBTA to return him to "the position he would have occupied" absent its alleged violations, and requiring the MBTA to "make him whole for all earnings he would have received." *Id.* He seeks compensatory damages for the "emotional distress and humiliation" he suffered, and punitive damages based on the MBTA's "intentional disregard and/or reckless indifference" to his rights. *Id.* Finally, he requests attorneys' fees, costs, and any other relief deemed proper by the court.[6] Compl. ¶ 96.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

---

[6] Marsman also moves to sanction the MBTA, Pl.'s Mem. in Opp'n to Mot. to Strike [Dkt. # 34] at 7, arguing that the MBTA did not confer with Marsman prior to filing its motion to strike, [Dkt. # 25], in violation of Local Rule 7.1(a), which states: "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue." District courts may sanction counsel for "litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of the proceedings," *United States v. Kouri-Perez*, 187 F.3d 1, 7 (1st Cir. 1999), a standard that is not met here. Therefore, the motion is denied.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original).  A material fact is one which has the "potential to affect the outcome of the suit under applicable law."  *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).  In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion."  *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

## DISCUSSION

For the reasons described below, Marsman's claims of religious discrimination (Counts I-II, IV-V) are contingent on his assertion that he complied with the procedural requirements necessary to obtain a religious exemption.  The Policy required submitting two forms to the MBTA: The Vaccination Self-Attestation Form and the Religious Exemption Form.  The only evidence that Marsman has presented that he complied with the Policy is his affidavit, in which he claims that he submitted both forms.[7]  However, "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory

---

[7] The Updated Policy permitted employees to seek exemptions from ODCR, but Marsman does not allege that he requested an exemption from ODCR.

explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons*, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994).

Marsman has failed to provide a satisfactory reason for the discrepancy between his affidavit and his deposition testimony, in which he states that he could not recall submitting a Religious Exemption Form, independent of the Vaccination Self-Attestation Form, as required by the Policy. He argues that any instances where his affidavit and assertions of fact in the pleadings diverge from his claims in his deposition testimony "[a]t most . . . reflect clarification, elaboration, or refreshed recollection," and "any discrepancy arises from confusion created by Defendant's own procedures." Pl.'s Mem. in Opp'n to Mot. to Strike at 1, 5. Additionally, he explains that, prior to his deposition, "he was told that it was better to not remember something than to make up stories." Pl.'s Opp'n to Summ. J. at 8. However, Marsman does not explain the basis for any confusion at his deposition. Similarly, he does not offer any reason for why his recollection was refreshed when he submitted his affidavit following the deposition. Therefore, Marsman's assertion in his affidavit that he recalls submitting a Religious Exemption Form, contradicting his deposition testimony, cannot be used to resist summary judgment.

Marsman has not provided any other evidence that he complied with the procedural requirements for obtaining a religious exemption to the MBTA's vaccination policy. While he alleges that he had conversations with Nyquist regarding an exemption, neither the Policy nor the Updated Policy permitted employee supervisors to grant exemptions outside of the established application process. Additionally, Marsman states that he could not verbally comply with the Updated Policy because ODCR employees worked remotely, but the Updated Policy permitted written requests for exemptions and provided an email address for reaching ODCR.

**Count I**

Marsman's claim that the MBTA violated Title VII, 42 U.S.C. § 2000e-2 (a)(1) fails. Title VII prohibits "employer practices" that discriminate based on religion and makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . ." Discrimination claims brought under Title VII are assessed using a two-part framework:

> First, the plaintiff must make [his] prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action . . . . [T]he burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.

11

*Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004); *see also Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023).  The MBTA has demonstrated that it offered a reasonable accommodation in the form of an accessible process by which employees could apply for an exemption to the Policy.  Marsman has not adequately alleged that he followed that process.[8]

**Count II**

Marsman's claim of discrimination under Mass. Gen. Laws ch. 151B, § 4(1) fails for a similar reason.  The provision prohibits employers from "discharg[ing] from employment" any individual because of their "religious creed." However, based on the evidence provided by the parties, the reason for Marsman's discharge was his failure to follow the MBTA's procedural rules.

**Count IV**

Marsman has not adequately alleged that the MBTA violated Mass. Gen. Laws ch. 151B, § 4(1a), which bars employers from  "impos[ing] upon an individual as a condition of . . . retaining employment any terms or

---

[8] Additionally, Title VII "prohibits certain *motives*."  *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015) (emphasis in original).  "Religious practice . . . [cannot be] a factor in employment decisions." *Id.*  Here, Marsman has not demonstrated that the MBTA had a discriminatory motive.

conditions, compliance with which would require such individual to violate . . . his creed or religion"  The provision requires employers to "make reasonable accommodation to the religious needs of such individual," a requirement that Marsman argues the MBTA violated.  Marsman's claim fails because the MBTA provided a reasonable accommodation, in compliance with Massachusetts law.  Marsman, however, has not offered evidence to show that he took the necessary steps to access the accommodation.

**Count V**

Marsman has not adequately alleged that the MBTA engaged in retaliation, in violation of Mass. Gen. Laws ch. 151B, § 4(4), which makes it unlawful for employers to "discharge, expel, or otherwise discriminate" against individuals who oppose an employer's discriminatory practices. Where, as here, there is no "direct evidence of a retaliatory motive," a plaintiff must establish the following prima facie case of retaliation: "[T]hat he engaged in protected conduct, that he suffered some adverse action, and that 'a causal connection existed between the protected conduct and the adverse action.'" *Mole v. Univ. of Massachusetts*, 442 Mass. 582, 591 (2004), quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 827 (1st Cir. 1991).

13

Marsman argues that the MBTA's actions constituted retaliation for the following reasons:

> Marsman opposed getting COVID-19 vaccines, a condition of his employment, which would have violated his sincerely held religious beliefs. The MBTA then applied its Vaccination Policy to Marsman, finding him in noncompliance, then wrote him up, fired him, and gave him the run around with inconclusive dates on which he was terminated."

Compl. ¶¶ 91-92. However, Marsman has not demonstrated a causal connection between his protected conduct and the adverse action he suffered. Specifically, he has not provided evidence that his opposition to receiving a COVID-19 vaccine, rather than his failure to apply for an exemption, caused the MBTA to terminate his employment.

## ORDER

For the forgoing reasons, the MBTA's motion for summary judgment is <u>ALLOWED</u> as to all counts. The Clerk will enter judgment for the MBTA and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

14